HALL, Judge.
First National Bank filed suit against Patterson Produce Company for damages due to the company’s default on two prom-missory notes. Patterson Produce answered and filed a three-count counterclaim, count I of which was directed to the bank’s alleged mishandling of certain deposits to the company’s accounts. The trial court entered summary judgment in favor of the bank on the authority of section 674.406, Florida Statutes (1983), as to count I of the counterclaim.[1] This appeal ensued.
The relevant facts reveal that Patterson Produce maintained a payroll account and corporate account with the bank. Richard H. Patterson, president of Patterson Produce, and Richard S. Patterson were the only persons authorized to sign on those accounts on behalf of Patterson Produce Company.
In November of 1981, Patterson Produce employed a bookkeeper, Rosa Sellers, whose responsibilities included making deposits to the company’s corporate and pay *1370 roll accounts at the bank. On at least seven occasions between November of 1981 and April of 1982, Ms. Sellers deposited checks received by Patterson Produce from its customer into the company’s accounts at the bank. Although these checks had been intended for deposit only (indeed, some of the checks had been restrictively designated to that effect), in each transaction the bank allowed Ms. Sellers to deduct some cash from the total amount of the deposit. As to the checks containing the designation, the bank allowed Ms. Sellers to strike through and cancel it. Ms. Sellers then proceeded to embezzle the money.
Patterson Produce was unaware of Ms. Sellers’ conduct. The statements sent to Patterson Produce during this period of time contained copies of the deposit slips showing the deducted amounts. The statements did not include the deposited checks as they had been returned to the company’s customers, the drawers of the checks.
At the hearing on the motion for summary judgment, the bank argued that section 674.406(4) requires the bank customer to discover and report to the bank an unauthorized signature or any alteration on the face or back of an item within one year of the time that the bank statements and items are made available to the customer. The trial court apparently adopted this argument in granting the summary judgment, notwithstanding the existence of an unresolved question of fact as to when the bank first received notice of the unauthorized withdrawals.
The sole issue on appeal is whether the trial court correctly applied the one-year limitation of section 674.406(4) to the instant cause. Having examined the language of the statute and the case law interpreting it, we conclude the legislature intended the one-year limitation of section 674.406(4) to deal exclusively with the subject of forgeries or unauthorized signatures upon checks or other instruments drawn against the customer’s account as well as the alteration of such checks or instruments.[2] See 19B Fla.Stat.Anno. 446, n. 4 (1983); Ossip-Harris Insurance, Inc. v. Barnett Bank, 428 So.2d 363 (Fla. 3d DCA 1983); Space Distributors, Inc. v. Flagship Bank, 402 So.2d 586 (Fla. 5th DCA 1981); Florida Federal Savings & Loan v. Martin, 400 So.2d 151 (Fla. 2d DCA 1981). Because the checks complained of herein were not drawn on the company’s accounts and thus not returned with its bank statements, the bank is not entitled to rely on the one-year limitation of section 674.406(4) as a defense to the company’s claim.
Accordingly, we reverse the summary judgment and remand for proceedings consistent herewith.
RYDER, C.J., and LEHAN, J., concur.

. 674.406 Customer’s duty to discover and report unauthorized signature or alteration.—
(1) When a bank sends to its customer a statement of account accompanied by items paid in good faith in support of the debit entries or holds the statement and items pursuant to a request or instructions of its customer or otherwise in a reasonable manner makes the statement and items available to the customer, the customer must exercise reasonable care and promptness to examine the statement and items to discover his unauthorized signature or any alteration on an item and must notify the bank promptly after discovery thereof.
(2) If the bank establishes that the customer failed with respect to an item to comply with the duties imposed on the customer by subsection (1) the customer is precluded from asserting against the bank:
(a) His unauthorized signature or any alteration on the item if the bank also establishes that it suffered a loss by reason of such failure; and
(b) An unauthorized signature or alteration by the same wrongdoer or any other item paid in good faith by the bank after the first item and statement was available to the customer for a reasonable period not exceeding 14 calendar days and before the bank receives notification from the customer of any such unauthorized signature or alteration.
(3) The preclusion under subsection (2) does not apply if the customer establishes lack of ordinary care on the part of the bank in paying the item(s).
(4) Without regard to care or lack of care of either the customer or the bank a customer who does not within 1 year from the time the statement and items are made available to the customer (subsection (1)) discover and report his unauthorized signature or any alteration on the face or back of the item or does not within 3 years from that time discover and report any unauthorized indorsement is precluded from asserting against the bank such unauthorized signature or indorsement or such alteration.
(5) If under this section a payor bank has a valid defense against a claim of a customer upon or resulting from payment of an item and waives or fails upon request to assert the defense the bank may not assert against any collecting bank or other prior party presenting or transferring the item a claim based upon the unauthorized signature or alteration giving rise to the customer’s claim.

. We make no determination with respect to the potential applicability of the three-year limitation for forged endorsements.